[Cite as *State ex rel. Cincinnati Enquirer v. Hunter*, 2013-Ohio-4459.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, EX REL. THE CINCINNATI ENQUIRER, | : | APPEAL NO. C-130072 |
| | : | |
| Relator, | : | *O P I N I O N.* |
| | : | |
| vs. | : | |
| | : | |
| HON. TRACIE M. HUNTER, JUDGE, HAMILTON COUNTY JUVENILE COURT, | : | |
| | : | |
| Respondent. | : | |

Original Action in Mandamus

Judgment of the Court: Writ Granted

Date of Judgment Entry: October 9, 2013

*Graydon Head & Ritchey, LLP,* and *John C. Greiner*, for Relator,

*McKinney & Namei Co., LPA, Farooz T. Namei* and *James F. Bogen*, for Respondent.

**DINKELACKER, Judge.**

{¶1} In this original action, relator State ex rel. The Cincinnati Enquirer has petitioned for a writ of mandamus to compel respondent Hon. Tracie M. Hunter, in her capacity as a judge of Hamilton County Juvenile Court, to provide certain court records under Sup.R. 44 through 47. We agree that Judge Hunter should have turned over the records, and we, therefore, grant the writ.

{¶2} On December 13, 2012, Kimball Perry, an Enquirer reporter, sent a letter to John Callum, Chief Deputy Clerk of Hamilton County Juvenile Court, requesting records under R.C. 149.43, Ohio's Public Records Act. It stated, "We seek to inspect and review the court docket or other documents that show the cases Hamilton County Juvenile Court Judge Tracie Hunter has presided over for Dec. 1-31 of this year."

{¶3} On January 8, 2013, Curtis Kissinger, the juvenile court administrator, sent an email to the Enquirer, to which he had attached Judge Hunter's docket for December 2012. But the documents he provided did not contain the names of the juveniles appearing before Judge Hunter. They were redacted to provide only their initials. Kissinger stated in his email that the redactions were made "[i]n accordance with an opinion from the Prosecuting Attorney." Kissinger copied this email to Judge Hunter.

{¶4} In response, Perry asked for references explaining why the court had failed to provide the juveniles' names. In his response, in which he also copied Judge Hunter, Kissinger reiterated that the substitution of the initials for the names of juveniles was done "in accordance with the advice provided by the Prosecuting Attorney." He cited as support for his position Sup.R. 44 through 47, Juv.R. 37(B) and some decisions of the Ohio and the United States Supreme Courts.

{¶5} Subsequently, the Enquirer's counsel sent an email to Kissinger requesting that the court provide "unredacted dockets for delinquency proceedings promptly." Kissinger replied that "[b]ased on counsel's advice, we remain of the opinion that the docket, with redactions, produced to Mr. Perry on January 8, 2013, properly complied with his request and thereby satisfies the Court's production obligation under R.C. 149.43."

{¶6} The Enquirer filed a complaint asking this court to issue a writ of mandamus to compel production of Judge Hunter's court docket for the month of December 2012 showing the full names of the juveniles involved in delinquency proceedings. Judge Hunter filed a motion to dismiss the complaint, which this court overruled. Subsequently, she filed a motion for summary judgment, in which she argued that neither the Rules of Superintendence nor the Juvenile Rules compelled her to produce the names. To the contrary, she claimed, those rules limit public access to juvenile records to protect the juveniles' confidentiality.

{¶7} To be entitled to a writ of mandamus, the relator must show (1) that it possesses a clear legal right to the relief sought, (2) that the respondents are under a clear legal duty to perform the requested act, and (3) that the relator has no plain and adequate remedy at law. *State ex rel. Natl. Broadcasting Co., Inc. v. Cleveland*, 38 Ohio St.3d 79, 80, 526 N.E.2d 786 (1988); *Davis v. Cincinnati Enquirer*, 164 Ohio App.3d 36, 2005-Ohio-5719, 840 N.E.2d 1150, ¶ 18 (1st Dist.). The civil rules apply to mandamus actions originating in the court of appeals. *State ex rel. Jones v. Vivo*, 7th Dist. Mahoning No. 00 CA 273, 2001 Ohio App. LEXIS 3645, *3 (June 27, 2001); *State ex rel. Millington v. Weir*, 60 Ohio App.2d 348, 349, 397 N.E.2d 770 (10th Dist.1978). Summary judgment is appropriate if (1) no genuine issue of material fact exists for trial, (2) the moving party is entitled to judgment as a matter of law, and (3)

reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his or her favor. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977); *Greene v. Whiteside*, 181 Ohio App.3d 253, 2009-Ohio-741, 908 N.E.2d 975, ¶ 23 (1st Dist.).

{¶8} The Rules of Superintendence provide for public access to court records. *State ex rel. Vindicator Printing Co. v. Wolff*, 132 Ohio St.3d 481, 2012-Ohio-3328, 974 N.E.2d 89, ¶ 23. A person aggrieved by a court's failure to comply with the requirements of Sup.R. 44 through 47 may pursue an action in mandamus under R.C. Chapter 2731. Sup.R. 47(B); *State ex rel. Culgan v. Collier*, 135 Ohio St.3d 436, 2013-Ohio-1762, 988 N.E.2d 564, ¶ 9.

{¶9} Specifically, Sup.R. 45(A) states that "[c]ourt records are presumed open to public access." A "[c]ourt record" means "both a case document and an administrative document, regardless of physical form or characteristic, manner of creation, or method of storage." Sup.R. 44(B). "Case document" means "a document and information in a document admitted to a court or filed with a clerk of court in a judicial action or proceeding, * * * and any documentation prepared by the court or clerk in the judicial action or proceeding, such as journals, dockets, and indices[.]"

{¶10} A "case document" does not include "a document or information in a document to which public access has been restricted pursuant to division (E) of Sup.R. 45[.]" Sup.R. 44(C)(2)(c). Under Sup.R. 45(E)(2), a court shall restrict public access to a case document, including using initials for the parties' proper names, "if it finds by clear and convincing evidence that the presumption of allowing public access is outweighed by a higher interest[.]" In making this finding, the court should consider (1) whether public policy is served by restricting public access; (2) whether

any state, federal, or common law exempts the document or information from public access; and (3) whether factors that support restriction of public access exist, including risk of injury to persons, individual privacy rights and interests, proprietary business information, public safety, and fairness of the adjudicatory process. Sup.R. 45(E)(2)(a)-(c).

{¶11} Judge Hunter has failed to present clear and convincing evidence that the presumption of allowing public access is outweighed by a higher interest. Judge Hunter relies on Juv.R. 37, but the provisions of Juv.R. 37 do not conflict with Sup.R. 44 through 47. The Enquirer sought only records related to delinquency cases. It specifically did not seek any records of dependency, neglect or abuse cases. In those types of cases, the names of the juveniles are not "case documents" within the meaning of Sup.R. 44 and 45; they are completely confidential. Sup.R. 44(C)(2) and (H). *See State ex rel. Plain Dealer v. Geauga Cty. Court of Common Pleas*, 90 Ohio St.3d 79, 83, 734 N.E.2d 1214 (2000).

{¶12} The Rules of Superintendence do not state that a court may substitute initials for the names of juveniles in delinquency cases. If the Supreme Court had wanted to provide for the same type of confidentiality in delinquency cases, it could have done so, but it did not. "[T]he express inclusion of one thing implies the exclusion of the other." *Myers v. Toledo*, 110 Ohio St.3d 218, 2006-Ohio-4353, 852 N.E.2d 1176, ¶ 24.

{¶13} Interpreting Juv.R. 37, the Ohio Supreme Court has stated that the need for confidentiality is less compelling in delinquency cases than in cases involving abused, dependent or neglected children. Consequently, delinquency proceedings are neither presumed open nor closed. *Id.* at 84-85. Judge Hunter sets forth only a blanket claim of the need for confidentiality in juvenile cases rather than

any specific need for confidentiality in the case documents sought by the Enquirer. That blanket claim is not sufficient to overcome the presumption in favor of open access to court records in Sup.R. 44(A).

{¶14} Judge Hunter also relies upon newly-enacted Juv.R. 5 as support for the proposition that a juvenile court may substitute initials for names on court dockets. Juv.R. 5(A) provides that "[i]n a juvenile court decision submitted for publication, the names of all juveniles shall be replaced with the initials in the caption and body of the published decision. In any press release or other public presentation of information from a juvenile court, the names of any juvenile shall be replaced with initials."

{¶15} Judge Hunter's argument ignores the provisions of Juv.R. 5(B). It states that "[J]uvenile courts may enact local rules for the use of juveniles' initials in juvenile court documents. In the absence of a local rule, all juvenile court proceedings and other documents filed in any juvenile court shall use the full names of juveniles rather than their initials." No local rule allowing for the substitution of initials for names in delinquency proceedings has been enacted. Therefore, under the express language of Juv.R. 5(B), the juvenile's full name must be used.

{¶16} Finally, Judge Hunter contends that the Rules of Superintendence are purely housekeeping rules that create no substantive rights in the individual litigants. *See Seymour v. Hampton*, 4th Dist. Pike No. 11CA821, 2012-Ohio-5053, ¶ 29; *State v. Sanders*, 1st Dist. Hamilton No. C-980154, 1999 Ohio App. LEXIS 1182, *9 (March 26, 1999); *State v. Gettys*, 49 Ohio App.2d 241, 243, 360 N.E.2d 735 (3d Dist.1976). "They are not the equivalent of rules of procedure and have no force equivalent to a statute." *Seymour* at ¶ 29, quoting *Gettys* at 243.

{¶**17**} As a general rule, we agree. Nevertheless, the superintendence rules were adopted by the Supreme Court of Ohio under the general superintendence power conferred upon the court by Article IV, Section 5(A)(1) of the Ohio Constitution. Sup.R. 1(B); *State v. McAdory*, 9th Dist. Summit No. 21454, 2004-Ohio-1234, ¶ 36. They apply to all courts in Ohio, and they are binding on those courts as long as they do not conflict with a statute or procedural rule. Sup.R. 1(A); *McAdory* at ¶ 36; *Justice v. Columbus,* 10th Dist. Franklin No. 91AP-675, 1991 Ohio App. LEXIS 5488, *5-6 (Nov. 14, 1991). Thus, the superintendence rules are binding on Judge Hunter as a juvenile court judge.

{¶**18**} Further, Sup.R. 44 through 47 became effective on July 1, 2009. *Vindicator*, 132 Ohio St.3d 481, 2012-Ohio-3328, 974 N.E.2d 89, at ¶ 23. Very recently, the Ohio Supreme Court stated that "while the Rules of Superintendence provide important guidelines for ensuring expeditious resolution of cases in the trial courts, they give litigants an enforceable right in mandamus only in specified circumstances, and those circumstances do not exist here." *Culgan*, 135 Ohio St.3d 436, 2013-Ohio-1762, 988 N.E.2d 564, at ¶ 8. The court then cited Sup.R. 47, noting that it gave an aggrieved party a right to a writ of mandamus for violations of Sup.R. 44 through 47, not Sup.R. 40, which the relator had relied upon in that case. *Id.* at ¶ 9.

{¶**19**} In *Vindicator*, the relators, a printing company and a television station, filed a complaint for a writ of mandamus compelling a common pleas court judge to release court records in a criminal case and for a writ of prohibition preventing the judge from enforcing orders sealing the record in that case. The Supreme Court held that "[b]ecause relators have established their entitlement to the requested extraordinary relief based on the Superintendence Rules, we grant the

writs. This renders moot relators' remaining claims based on the United States Constitutions, the common law, and R.C. 149.43, the Ohio Public Records Act." *Vindicator*, 132 Ohio St.3d 481, 2012-Ohio-3328, 974 N.E.2d 89, at ¶ 1. It stated, "This result is consistent with our well-settled precedent that we will not indulge in advisory opinions." *Id.* at ¶ 42.

{¶20} Thus, Sup.R. 44 through 47 justify the granting of a writ of a mandamus for a violation of those rules and we need not address any other basis justifying the release of the records. We hold that the Enquirer has shown (1) that it possesses a clear legal right to the information it sought, including the full names of the juveniles, not just the initials, (2) that Judge Hunter had a clear legal duty to provide the information, and (3) that it has no adequate remedy at law. Thus, it has shown that it is entitled to a writ of mandamus. We, therefore, grant the writ to compel Judge Hunter to turn over to the Enquirer the docket records it had requested, including the full names of the juveniles.

Writ granted.

**HILDEBRANDT, P.J.,** and **CUNNINGHAM, J.,** concur.

Please note:

The court has recorded its own entry this date.

8