The STATE ex rel. PORTUNE, Appellant,

v.

NATIONAL FOOTBALL LEAGUE et al., Appellees.

[Cite as *State ex rel. Portune v. Natl. Football League,*
155 Ohio App.3d 314, 2003-Ohio-6195.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–030662.

Decided Nov. 21, 2003.

Furnier & Thomas, L.L.P., Robert R. Furnier and Donyetta D. Bailey, for appellant.

Taft, Stettinius & Hollister, L.L.P., Robert G. Stachler and John B. Nalbandian, for appellees.

GORMAN, Presiding Judge.

{¶ 1} The defendant-appellee, Cincinnati Bengals, Inc. ("Bengals"), has moved to strike the "Notice to Substitute Relators" filed in this appeal by the plaintiff-appellant, Hamilton County Commissioner Todd Portune. Because Commissioner Portune has not shown that substitution of a nonparty is "necessary" under App.R. 29(B), and because the nonparty he is attempting to substitute has not established standing under R.C. 309.13, the motion to strike is hereby granted.

{¶ 2} Commissioner Portune has appealed from the order of the Hamilton County Common Pleas Court dismissing his taxpayer's suit in which he seeks damages and other relief, pursuant to R.C. 309.12 and 309.13, against the National Football League and its member clubs, including the Bengals. His complaint, filed January 30, 2001, alleges claims for fraud, civil conspiracy, and breach of contract. On September 4, 2003, the common pleas court dismissed his taxpayer's suit. The next day, on September 5, 2003, Commissioner Portune filed his notice of appeal, and jurisdiction was transferred from the common pleas court to this court. On September 30, 2003, he filed a document with this court captioned "Notice to Substitute Relators," which advised that he intended to substitute Caroline R. Davis of Cincinnati, Ohio, for himself as the relator.

{¶ 3} Commissioner Portune's attempt to hand off to Davis was in response to the opinion, dated September 10, 2003, from the Ohio Ethics Commission that his counsel requested on July 11, 2003. The Ohio Ethics Commission advised that because of the potential economic benefit to Commissioner Portune through recovery of costs and attorney fees if he was successful in his taxpayer's suit, R.C. 102.03(D) and (E) prohibited him from participating as a commissioner in the decision to appoint special counsel to determine the merits of the Hamilton County Board of Commissioners' becoming a party to his taxpayer's suit or from soliciting from the board any benefits related to his taxpayer's action. The Ohio Ethics Commission further advised that Commissioner Portune was prohibited "from voting, discussing, deliberating about, formally or informally lobbying, or taking other official action, in his role as a County commissioner, with respect to any future motions on the claims."

{¶ 4} Dissatisfied with the political limitations imposed by his capacity as relator, Commissioner Portune has tried to substitute Davis for himself in this court by filing a notice of that fact. This procedure is contrary to App.R. 15(A), which provides that, unless otherwise prescribed by the Ohio Rules of Appellate Procedure, an application for an order or other relief is to be made by motion. See, also, App.R. 29. The procedure for substitution of a nonparty is the same in the court of appeals as it is in the trial court. Civ.R. 25. See *State ex rel. Serv. Emp. Internatl. Union Dist. 925 v. State Emp. Relations Bd.* (1998), 81 Ohio St.3d 173, 689 N.E.2d 962, fn. 1.

{¶ 5} For this reason alone, the motion to strike is well taken. But in the interest of judicial economy and procedural guidance—since to strike the notice will only give rise to the required motion—we also address the issues raised by the parties in their memoranda relating to the substitution of a nonparty plaintiff in a taxpayer's suit after the notice of appeal has been filed.

{¶ 6} After a notice of appeal has been filed, a new party may be substituted by motion, as provided in App.R. 29(B), "[i]f substitution of a party in the court of appeals is *necessary* for any reason other than death." (Emphasis added.) The language in App.R. 29(B) is identical to that of former Fed.R.App.P. 43(b), which was amended in 1998 for stylistic purposes only. Fed.R.App.P. 43(b), Advisory Committee. Notes, 1998 Amendments. In interpreting the Ohio Civil Rules of Procedure, the Ohio Supreme Court has consistently advised that "federal cases provide guidance to our interpretation of these rules." *Soler v. Evans, St. Clair & Kelsey* (2002), 94 Ohio St.3d 432, 763 N.E.2d 1169, fn. 8. The same principle of construction should apply equally to the Ohio Appellate Rules.

{¶ 7} Interpreting the requirement of necessity in former Fed.R.App.P. 43(b), federal courts have held that a party must be unable to continue to litigate as opposed to voluntarily choosing to cease his or her participation in the litigation.

*Alabama Power Co. v. Interstate Commerce Comm.* (C.A.D.C.1988), 852 F.2d 1361, 1366; see, also, *Maier v. Lucent Technologies, Inc.* (C.A.7, 1997), 120 F.3d 730, 732, fn. 1. Here, the timing of the Ohio Ethics Commission's opinion presented Commissioner Portune with a difficult political decision. Should he pursue his appeal of the dismissal of his taxpayer's suit, or—now that the political climate might have changed with the arrival of a new, potentially sympathetic member on the board—should he try to achieve a political solution rather than a legal one? In this regard, it is significant to note that Commissioner Portune has not suggested that he is unable or incapable of continuing as the appellant in the appeal of the order dismissing his taxpayer's suit. The Ohio Ethics Commission did not advise Commissioner Portune that he cannot pursue his appeal; it stated only that, having initiated his taxpayer's suit, he is barred from also participating as commissioner in related issues before the board.

{¶ 8} We hold that the political decision made by Commissioner Portune constitutes a voluntary decision to withdraw from the litigation and is not based upon "necessity" as that word is used in App.R. 29(B). In short, legal necessity means more than mere political expediency. Thus, even if the effort to substitute had been properly couched as a motion, relief could not be afforded under this section of the appellate rule.

{¶ 9} Commissioner Portune argues alternatively that substituting Davis should not be treated as a change of parties, but only as a change of legal representation. The basis of his argument in this regard is that the state of Ohio—not the taxpayer bringing the action—is the real party in interest, and that the taxpayer is merely acting "in the prosecutor's stead" as the state's attorney in fact. This being so, Commissioner Portune argues, the appellate rule that "most closely relates" to his attempt to personally withdraw from the litigation is App.R. 29(C). This section provides that "[w]hen a public officer is a party to an appeal or other proceeding in the court of appeals in his official capacity and during its pendency dies, resigns or otherwise ceases to hold office, the action does not abate and his successor is automatically substituted as a party."

{¶ 10} According to Commissioner Portune, App.R. 29(C) has applicability because when the prosecuting attorney declines to bring an action, necessitating that a taxpayer do so, the taxpayer serves as a public official under R.C. 309.13. Therefore, Commissioner Portune argues, the rule's language concerning automatic substitution should guide us. We disagree. This same argument that the relator in a taxpayer action acts in the capacity of a public official was advanced and rejected in *State ex rel. Hostetter v. Hunt* (1937), 56 Ohio App. 120, 9 O.O. 254, 10 N.E.2d 155. In *Hostetter*, the Fifth Appellate District observed that in a taxpayer action, the "[p]laintiff comes into this court strictly as a taxpayer, wearing the garment of no public official." Id. at 127, 9 O.O. 254, 10 N.E.2d 155.

The court continued, "The mere fact that the action contemplated by Section 2922, General Code [now R.C. 309.13], is required to be instituted in the name of the state does not change the private character of the plaintiff to that of public officer. The same situation arises whenever an action in mandamus or habeas corpus is instituted. Both are ex rel. proceedings, but plaintiff is nevertheless acting in the capacity of a private citizen in filing suit." Id.

{¶ 11} The Bengals correctly point out, in this regard, that Commissioner Portune is acting only in a private capacity as relator in the taxpayer's suit, not in his capacity as a public official. If this were not the case, his involvement as relator would not give rise to the potential conflict of interest discussed by the Ohio Ethics Commission. Furthermore, his involvement would be subject to the Ohio Public Records Act (R.C. 149.43) and the Open Meetings Act (R.C. 121.22), which it is not. We agree with and adopt the reasoning of the Fifth Appellate District in *Hostetter* that the relator in a taxpayer action is not conferred with official status and acts only as a private citizen.

{¶ 12} We do not accept, either, the proposition that the state is the real party in interest in every taxpayer action. In original actions such as habeas corpus, mandamus, or prohibition filed by private parties acting ex relatione, the state is not the real party in interest. Clearly, relators in such actions would like to believe that they are acting on behalf of the state, but this is often nothing more than a fiction. Although language in R.C. 309.13 requires that a taxpayer action be treated "as if brought by the prosecuting attorney," even when the prosecutor files an action under R.C. 309.12, he is not acting in his official capacity as the legal representative of the county, but only as the relator who has been granted standing to assert a claim in the name of the state by R.C. 309.12.

{¶ 13} Finally, although not raised by either party, another relevant factor in determining whether the proffered substitution satisfies the necessity requirement of Civ.R. 29(B) is the failure of Davis to intervene in common pleas court. Civ.R. 24 governs the procedure for intervention in the common pleas court but has no counterpart in the appellate rules. A motion to intervene at the appellate level differs significantly. When a motion is filed in the common pleas court by a would-be intervenor, evidence may be taken on issues such as timeliness, the nature and sufficiency of the would-be intervenor's interest, and other pertinent questions. By contrast, an appellate court undertaking the function of review takes no evidence, creates no record, and decides no factual issues in the first instance. It simply reviews de novo the common pleas court's judgment on the record made in that court. Accordingly, when a postjudgment motion to intervene is filed by a nonparty after jurisdiction has been transferred to the appellate court by the filing of a notice of appeal, it will ordinarily be granted only in an exceptional case, for reasons that are deemed imperative.

*State ex rel. First New Shiloh Baptist Church v. Meagher* (1998), 82 Ohio St.3d 501, 503–504, 696 N.E.2d 1058.

{¶ 14} Although he did not receive a definitive answer from the Ohio Ethics Commission until six days after he had filed his notice of appeal, Commissioner Portune knew of the potential for a conflict of interest as evidenced by his counsel's letter to the Ohio Ethics Commission on July 11, 2003. Despite his awareness of the potential conflict, Commissioner Portune made no effort to seek substitution of another as relator while the case was still pending in the trial court, where it was still possible to take evidence on the request. Consequently, no record has been made that would support Davis's interest in the case and demonstrate why her substitution at this level is necessary to prevent abatement of Commissioner Portune's taxpayer's suit.

{¶ 15} Finally, the memorandum in opposition to the Bengals' motion to strike, filed by Commissioner Portune's counsel on October 17, 2003, states, "Commissioner Portune has already resigned as relator." Nothing in the record supports this statement.

{¶ 16} For all of these reasons, the motion to strike the "Notice to Substitute Relators" filed by Bengals is granted, and the notice is hereby stricken from the record of this case.

Judgment accordingly.

PAINTER and WINKLER, JJ., concur.